Court will proceed to the third case, Myers v. Neal. General Drum. Thank you. May it please the court. The court should reverse the district court because the state court reasonably applied Strickland. During a 12-day trial, the state presented abundant evidence to prove that Myers murdered Jill. Myers all but confessed to his cellmate and to his grandmother and obsessed over Jill's where Jill's bike was found. He was home when she disappeared, holed up in his trailer afterward, and talked about leaving town. He had no alibi, he had access to the murder weapon, and he had taken his ex-girlfriend to the same clearing in the woods where Jill's body was found just two months earlier. In the face of that strong case against Myers, his counsel used a strategy that Myers has never argued was unreasonable. Counsel suggested two alternative suspects, one for Jill Road North and the other for Jill Road South. As any attorney would in a long trial, counsel made mistakes, but only one of them was professionally unreasonable and none of them denied Myers a fair trial. The district court should have reviewed the actual reasons that the state court gave for its decision and then deferred because they were reasonable. Instead what the court did is the same thing the Ninth Circuit did in Harington v. Richter, which is it reviewed the ineffective assistance of counsel claims de novo, found a Strickland violation, and then concluded that the state court decision must have been unreasonable. The court actually made two compounding errors here. First, it should not have reviewed any of the performance prong questions de novo just because the state court didn't consider that part of a Strickland claim. Ineffective assistance of counsel is one claim with two claims. It's clear from Harington v. Richter that if a court only addresses one prong, then it has adjudicated the claim on a merit, and re-litigation is barred unless the court's conclusion was an unreasonable application of Strickland. So the court never should have reviewed any of the claims de novo, and only after reviewing the claims de novo did it find multiple deficiencies, and so that comes to the second problem in the district court's The state court actually only found one act of deficient performance, and so there weren't multiple claims to aggregate. There is no clearly established law that requires courts to combine the prejudice from one act of deficient performance with the prejudice from other acts that do not amount to deficient performance. And so, and so it's reasonable. It's Judge Scudder. While we're on these, while we're on the standards, let me let me ask you this. I know this is contrary to what you argue, but it would help us if you could address this. Assume, okay, assume we conclude that there was deficient performance in all, on all three aspects of, you know, kind of the primary ineffective assistance contentions. What I mean by that is the false statements during opening the case are contrary to object to the rape testimony evidence. Assume that we conclude deficient performance. Do you agree if we, we would have to then move on to prong to prejudice, and what would the standard of our review be in your judgment? The court would still look at what the state court did for prejudice. So the state court addressed prejudice for opening statement, and it addressed prejudice for the rape evidence. And so if the court reasonably actually addressed prejudice for all three, it also addressed prejudice for the bloodhound evidence. And so if the court's application of the prejudice prong was reasonable, then the court should defer to what the state court did. Even though in paragraph 90 of the Indiana Court of Appeals opinion, it seems pretty clear to me that they did not undertake a cumulative prejudice review. And the reason they didn't, Your Honor, is because they only found one act of deficient performance. And so there was no prejudice to aggregate. Strickland is clear that relief is only available for professionally unreasonable errors by counsel. The decision that distinguishes between normal run of the mill errors, what it calls trivial errors. No, I understand Strickland just fine. Um, but if we if we conclude there's deficient performance on all three dimensions of the claim, as I as I just mentioned, the question I have at its core is why wouldn't we then undertake the prejudice analysis to Novo? Well, because the court so reasonably decided that the prejudice component of each of those claims and so then it wouldn't. But even if the court did review it to Novo, then the outcome would still be the same. Because those those errors, if the court were to find efficient performance, were not related, even added together, they didn't add up to a reasonable probability of a different outcome at Myers trial. Well, I know I know that's your argument. I'm not so sure the Indiana Court of Appeals went through that analysis, though. I think implicit in a prejudice analysis, the court does look at at the entire proceedings because they do have to decide whether there's a reasonable probability of a different outcome at trial. So whenever the court examined prejudice for each individual claim, it was considering that act in relation to the rest of the trial. So our position is that the state court decision would still be entitled to in all three acts. We're in the state court's opinion. Are you relying on for that argument that they did consider all three as opposed to just a particular error that they were analyzing? Well, it's not in the opinion, Your Honor, because the state court didn't find efficient performance for all three acts, right? I'm trying to make it. I think that's the point. Since the state court didn't find it, it did not do a cumulative error analysis. But if we were to find deficient performance on all three, then what standard of review would we address in performing that analysis for prejudice? I think if the court were to find that it would necessarily have to find that the state court unreasonably applied strictly. And if it found that, then I agree that the court would review de novo. Yeah, we would. Right. Exactly. Mr. Drummond, I have a second question for you, and it's it relates to a statement you make on page seven of your reply brief that maybe you can help me understand. You say here, by contrast, referring to this case, the pathologist's opinion that Jill might have been raped only suggested the murderers motive. It did not suggest Myers motive. Isn't Myers the murderer in your view? Yes, he absolutely is, Your Honor. But that comes from all of the other evidence that was presented at trial. The fact that Myers was the murderer. So is it your position that the pathologist, when he was talking about the nature, you know, no clothing, the way the body was recovered, the gunshot wound to the head, um, was talking about somebody other than the motive that the defendant may have had? No, no, that's not my position, Your Honor. But the point I was trying to make is that the pathologist did not identify the defendant, and that's what distinguishes this case from House v. Bell. In that case, the state specifically presented evidence that purported to be the semen of the defendant in that case. Yeah, there just seems to be there just seems to be no question in my mind, um, that the state argued in closing that there was a rape motive. And that I agree. I'm sorry. Yeah. You have any doubt about that? No, I agree, Your Honor. But the state could have made that argument based on all of the other evidence besides the pathologist testimony. What evidence besides his testimony could the state have relied on for a rape motive? It seemed to me that the only evidence of rape came through that expert. Well, unfortunately, I think the jury could have concluded just based on common sense that you have a young female found in the woods with no clothes. That's not what you just said. What you just said was there was other evidence. What evidence? The scene of the crime, Your Honor, first of all, and second of all, statement to his to his cellmate, he said, and I'm paraphrasing, he said that if she wouldn't have said anything, then none of this would have happened. The jury could reasonably inferred from that statement that something happened before she was murdered. And based on the other circumstances of the crime scene, the jury could have inferred that she was raped before she was murdered. So the state still could have made that argument even without pathologist testimony. Is there any evidence of motive other than what the state argued the rape evidence? Yes, there is, Your Honor. There was also abundant evidence that Myers was very upset during that time because his girlfriend, Carly Goodman, had dumped him. And so arguably he was looking for Carly and he just happened to find Jill. She was in the wrong place at the wrong time. That was an alternative motive that could have supported this crime here. Mr. Drum, do you think, Mr. Drum, do you think Brian Holler's testimony at the trial helped or hurt Mr. Myers? It probably hurt Myers, Your Honor. I don't... Okay, and why is that your instinct? Well, I don't know how to answer that. I think it's correct and I'm trying to just draw out why do you react that way? I think that's the right reaction. Well, because Holler did have an alibi. It wasn't fail-safe, but he did have one. Okay, and so if you just keep going with that, isn't that nobody's talking about the Brian Holler's testimony and I don't, for the life of me, understand why. But isn't that precisely kind of the upshot of your adversary's point? That when you stand up and when a defense lawyer stands up and opening statement and promises, not that the evidence is going to fail to show beyond a reasonable doubt that the defendant committed a crime, but more affirmatively, we will show you who committed the murder. And you say it's a it's a felon named Brian Holler's. And then that guy comes into the courtroom and testifies as he did. Doesn't that make the error in the opening statement all the more prejudicial? It's conceivable that it could make it more prejudicial, Your Honor, but it was reasonable for the state court to conclude that there wasn't a reasonable probability of a different outcome. There was other evidence to link Holler's to the crime. And of course, Meyers' counsel didn't solely depend on the Holler's theory in defense. And I don't think it would have made a difference even if there were evidence that his dog actually tracked the Holler's door. I don't know if that would have made a difference in this case because the evidence against Meyers was so strong and so compelling. And again, Meyers has never argued that it was unreasonable for his counsel to rely on the Holler's theory as one of its defenses. I don't know of any clearly established federal law that requires a defense counsel to only present one alternative theory of defense. All they're trying to do is create reasonable doubt in one juror's mind. And so here they presented two possible alternative suspects. And that was reasonable because then they didn't have to specifically show that Jill rode north or that she rode south, rather, because most of the evidence did show that she rode north. And so this, again, the opening statement was one part of a 12-day trial. It happened early on. The jury knew that the counsel's arguments were not evidence. And there was significant evidence of Meyers' guilt. In light of that, the state court's conclusion that Meyers wasn't prejudiced by the opening statement was reasonable. All right. Mr. Drum, your time is down to a little over a minute. So do you want to save that for rebuttal? I will, Your Honor. If there are no further questions, no. Thank you. Mr. Akrami? Good morning, Your Honors. Can you hear me all right? Yes. Great. Thank you. Good morning. Ferris Akrami with Jenner & Block for appellee John Myers. While awaiting trial, John Myers was approached in jail by a lawyer who wanted to make a name for himself. Trial counsel would later admit both that he was, quote, motivated by selfishness, expecting publicity from the case would lead to an increase in his business, end quote, and that his conduct, quote, victimized three people, including John Myers, Brian Hollers, and John Myers' mother. What's more, counsel's promises of free, high-quality representation were far more than he could deliver. Again and again during trial, his lack of preparation and misunderstanding of critical evidence undercut Mr. Myers' cause, and these failures transformed a closed case in which Mr. Myers had strong defenses against the state's purely circumstantial theory into a proceeding clouded by inadmissible and profoundly prejudicial testimony. It's no surprise that trial counsel was ultimately suspended from the practice of law in Indiana for his misconduct here, and the district court's meticulous 147-page analysis was correct. This is an exceptional case warranting a writ of habeas corpus. I hope to address four points with you this morning. First, I'll explain the prejudice caused by trial counsel's undisputedly false promises during opening statements. Second, I'll address the Indiana court's unreasonable application of Strickland and Wiggins v. Smith to trial counsel's failure to object to bloodhound evidence. Third, I want to touch on why the Indiana court was also unreasonable in applying Supreme Court authority when it held Myers was not prejudiced by the state's expert conjecture that the victim, Jill Bierman, had been raped before she was murdered. And finally, and I'll touch on this first, actually, I'll also address the state court's outright refusal to assess prejudice flowing from multiple instances of deficient performance cumulatively. This point is key. Each of trial counsel's errors is sufficient to grant relief, but together, their unassessed prejudice is far more than the sum of its part. And Judge Scudder, you touched on this, and Mr. Drum, my colleague on the other side, just conceded that if there were multiple instances of deficient performance, the Indiana court of appeals necessarily unreasonably applied Strickland v. Washington. That seems to be a major concession from the briefs in which they argued that there was no clearly established law on this point. Mr. Drum just conceded as much. I want to turn first to the opening statement. This is point one, where everyone concedes there was deficient performance. The state now argues, however, that the jury simply didn't notice counsel's unfounded and debunked promises during opening argument that Jill Bierman, a young woman, became involved with her much older supervisor, Brian Hollers, became pregnant, was murdered for it by Brian Hollers, and that the state then covered for her killer. Mr. Crammey, this is Judge St. Eve. The trial court instructed the jury that opening statements were not evidence and that they should not consider them as evidence. How should that impact our analysis under Strickland? So I think, Your Honor, that that's absolutely true, but these opening statements infected the entirety of trial proceedings and the state made sure it was so. The state pointed out trial counsel's mendacity again and again, hitting defense counsel for either not knowing what he was talking about or outright lying to the jury at least three times during its closing argument about this bloodhound evidence that defense counsel would later admit he hadn't thoroughly investigated. This court in Hampton v. Leibach observed that promises during an opening statement of particular testimony, quote, creates an expectation in the minds of jurors. And when defense counsel without explanation fails to keep that promise, the jury may well infer the testimony would have been adverse to his client and may also question the attorney's credibility, end quote. To Judge Scudder's point a few moments ago, in this case, defense counsel didn't just promise that a certain witness would say something in a certain way. He promised evidence that would prove that Jill Bierman's supervisor, Brian Hollers, was the murderer. He promised that evidence without reviewing the bloodhound evidence he thought would support it. And he was embarrassingly, his misunderstanding was pointed out again and again before the jury. So these weren't just simple missteps. These were attention-grabbing false promises designed to conjure up headlines, which they did. Brian Hollers, whenever he was on the stand during cross-examination, or sorry, responding to a juror's question, said first he had heard of the bloodhound tracking to his home was in the newspaper. So they did what they were designed to do. But they also betrayed counsel's complete lack of understanding of what the evidence actually said. And the state court's approach to assessing the prejudice here in myopic isolation, to Judge Scudder's point as well, was an unreasonable application of Strickland. Mr. Hartman, just mindful of your time, can you move to the prejudice prong, and let me tell you what weighs on me here to get the benefit of your reaction, is I think you've done a terrific job on the deficient performance prong. Your brief is very, very well done, and you'd be complimented for it. On the prejudice prong, there is quite meaningful evidence on the other side of the ledger, is there not? And what I mean by that is you seem to make the point that, well, yeah, John Myers was talking to a lot of people at a lot of different times about Jill Berman's disappearance. But, you know, so, too, was everyone in the local community and, indeed, throughout the state, and maybe on a broader level throughout the nation. There was a lot of discussion of the Jill Berman murder. I think, well, fair enough, okay? But John Myers wasn't talking about the disappearance in any expected or ordinary way. Was he by saying he, you know, for example, he hoped Berman would be found, or he had just attended a prayer vigil, or anything like that? He talked about it in inculpatory terms with many people. That's what troubles me on the other side of the case. So I think that it's true that there's evidence that John Myers had conversations and sometimes even exaggerated what he knew about the case in casual conversations with folks around him, with acquaintances and coworkers. But I think it's also true that simply talking about this case likely was not enough, I mean, certainly was not enough to establish beyond a reasonable doubt that he committed a murder. And, indeed, the state argued just a few moments ago that he had no alibi, but it didn't meaningfully contest in its brief that if Jill Berman had ridden the southern route, cycled the southern route on the morning she went missing, he had an airtight alibi, an unassailed alibi at trial, which was that he was home just a few moments, a few minutes before her bike was found, and he couldn't possibly have made it physically to the southern route in order to have been her assailant. And the evidence going to the northern route and the southern route was very closely balanced as the district court observed, but for the inadmissible bloodhound evidence. Mr. Archimonde, take, for example, let's go back to the core of the prejudice argument. In your view, could the jury have viewed the statements that Mr. Myers made to his grandmother, Betty Swofford, as an admission to the crime? So I think that if we were applying, for instance, the sufficiency of the evidence standard, it's possible, but that's not what the district court did and that's not what this court did. No, I know, but on prong two, right, when we have to ask ourselves the question is, is our confidence undermined in the outcome in light of, I think, what's pretty clear deficient performance on defense counsel's part, we would then, would we not, we'd consider Ms. Swofford's testimony, we'd consider Debbie Bell's testimony, we'd consider Carly Goodman's testimony. Mr. Myers told Doug Alexander, he told Doug Alexander, a coworker, that if he, Myers, was gonna hide a body, he would do it up north in a wooded area. Is that not inculpatory? I think that you're correct that this is evidence from which a juror could infer that there was some consciousness of guilt. And the district court discussed this thoroughly throughout its prejudice discussion. There was some sort of self-aggrandizement and I can't get inside Mr. Myers' head on that and explain why he would want to portray that he knew more about this crime than he did, but what's clear- But hold on, self-aggrandizement or that he knew more, it's more than that, that's my concern. It's inculpable, it's not, for whatever reason, some guy in Bloomington, Indiana, had an obsession with a local crime, okay? It's more than that, is the concern that I have. So, Your Honor, I think that there were, even this sort of these statements that he made to the people around him was far from enough to convict him of this crime, particularly given his strong defenses. And if I may sort of discuss briefly how I think these errors interacted to prejudice him, that hopefully will crystallize this just a little bit. Counsel's promises to the jury about evidence he said would inculpate Brian Holler's and show the state was covering for him destroyed counsel's credibility. So any defense that he may have had on really anything that counsel was putting forward was called into question. The jury was left to conclude that defense counsel was either clueless or willfully misleading them on this theory, destroying that defense. Second, counsel's false statements primed the jury to pay close attention to the bloodhound evidence, which sort of gave this quasi-scientific imprimatur to this Northern route, destroying the relatively strong alibi, the uncontested alibi, had Jill Bierman ridden South. Notwithstanding Mr. Myers' other statements, it's clear that had she ridden South, there's no way the state could have met its burden. And the same evidence, this is the same evidence that trial counsel later failed to object to. And it, again, allowed the state to establish opportunity. And then finally, Dr. Radden's testimony about the rape allegations, House v. Bell makes crystal clear that this sort of allegation, even where there's other evidence that the jury could use to infer guilt is extremely prejudicial. In that case, it was prejudicial enough to meet the actual innocent standard. Do you agree with the state that there's other evidence that the jury could have inferred rape was the motive here? No, Your Honor. The standard here, again, this is not Jackson v. Mississippi. And I think the state sort of tries to muddy this water a little bit by saying a common sense approach or a possible supportable inference is enough. The question is whether this could have, in Mr. Drum's words a few moments ago, all the defense lawyer is trying to do is create a reasonable doubt in one juror's mind. That was Mr. Drum's words just a few minutes ago. Here, but for this one, this was the only evidence that actually purported that the state used to tie John Myers to this crime. It gave him motive. The state argued in closing, quote, you know the motive in this crime is clear. Dr. Raddatz told you this is a classic rape murder. In house, the Supreme Court said, quote, when identity is in question, motive is key. The state concedes here that identity, the identity of Jill Berman's assailant was the question in this case. This was the only evidence of motive and it therefore was of central importance because without it, the jury would have found it necessary to establish some other motive. So together we have credibility, opportunity, and motive, destroying all three of Mr. Myers' defenses. The defense that hollers, which again, as Judge Scudder observed, is a very tenuous defense in the first place, but it's the one defense counsel chose to pursue. That was undermined by the misstatements during opening. And then the other two defenses, his alibi, which was not meaningfully contested, and this Owings theory that Wendy Owings had confessed to killing the victim. She later recanted to be sure, but this is one of the other grounds that the district court reached and declined to decide because he concluded it was a closer question and these clear instances of deficient performance were enough to carry the day because together they caused this incredible synergistic prejudice. There was not enough in this case to meet the beyond a reasonable doubt standard the state had to meet without counsel's errors. Trial counsel's errors together destroyed each of Mr. Myers' defenses and left him in the position that got him convicted. And that's why he spent 14 years in prison. Mr. Crammey, you have just a few seconds left. You want to make a final summation? Yes, Your Honor. Thank you, Judge Blum. And thank all of you for taking the time. I know that on behalf of Mr. Myers, it means a great deal that you've made this happen today despite the circumstances. John Myers has been in prison for 14 years. He got there because his trial attorney was more interested in making headlines and drumming up publicity for his practice than he was in researching the case, reading the evidence, deposing key witnesses, or preparing for trial. The Supreme Court has made clear that the Sixth Amendment guarantees better. It's the state's burden to prove beyond a reasonable doubt a defendant's guilt. Here, he has more than proven a reasonable likelihood of a different outcome. The district court's grant of a writ of habeas corpus in this extraordinary case must be affirmed. Thank you so much. Thank you, Mr. Crammey. Mr. Drum? Thank you. I want to clarify one point that the state did not concede that the state court unreasonably applied Strickland. The point I was making is that the only way this court could get such an over-review is if it found that the state court unreasonably determined that Myers was not prejudiced by opening statement, that Myers was not prejudiced by the rape evidence, and that Myers was not prejudiced by the bloodhound evidence. The state court decided the opening statement issue and the rape issue on prejudice only. So the district court's job and this court's job is to look at what the state court said and ask whether it is reasonable. If it is, then 2254D bars relitigation. That's the only way this court could get such an over-review. Mr. Drum, does Strickland require a cumulative prejudice analysis in your view? It only does if there are multiple acts of professionally unreasonable conduct that can be accumulated. Okay, and if we conclude here, just assume, I know you're arguing for a different conclusion, but just assume that we conclude that the three instances that are the focus of Patrick Baker's performance were deficient within the meaning of prong one of Strickland. Okay, would we then need to undertake a cumulative assessment of whether those three errors resulted in prejudice within the meaning of Strickland? No, because the only way the court could get there is if it determined that the state court unreasonably concluded that Myers was not prejudiced by the opening statement or by the rape evidence. That's the only way that the court could get to an over-review and could actually conclude that counsel performed efficiently in all three respects. All right, do you want to make a final comment, Mr. Trump? No, thank you, Your Honor. If there are no further questions, the state asks the court to reverse the next record. Thank you. All right, thank you. Thanks to both counsel. The case is taken under advisement. Court will proceed to the fourth case.